IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO
2017 JAN 13 PM 2: 56
JEFFREY P. COLWELL
CLERK
BY_____ DEP. CLK

Civil Action No. _____
(To be supplied by the court)

__Todd J. McNally_____, Plaintiff,

v.

__Michael Carns_____,

_____,

_____,

_____,

_____,

_____,

_____, Defendant(s).

(List each named defendant on a separate line.)

---

**COMPLAINT**

---

(Rev. 07/06)

## PARTIES

1. Plaintiff _Todd J. McNally_ is a citizen of _United States_ who presently resides at the following address:
   _4400 South Quebec St, #C108, Denver, Colorado 80237_

2. Defendant _Michael Carns_ is a citizen of _United States_ who live(s) at or is/are located at the following address:
   _____

3. Defendant _____ is a citizen of _____ who live(s) at or is/are located at the following address:
   _____

   (Attach a separate page, if necessary, to list additional parties.)

## JURISDICTION

4. Jurisdiction is asserted pursuant to following statutory authorities:
   _____
   _____
   _____

5. Briefly state the background of your case:

(Rev. 07/06)                           2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| Todd J. McNally | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Michael Carns | ) |
| | ) |
|    Defendant. | ) |

## COMPLAINT

1. This case is an extraordinary case of vengeance, extortion, blackmail, greed, and malicious intent by Carn's, a wealthy trust fund baby, to destroy McNally's life and career in a scheme designed to defraud and use the United States Court system as a tool to show he can put and keep a good man down because of his power and wealth.

2. Carn's fraudulent scheme was filed both in 2016 and 2017, however, Carn's pre-planned and deliberately took action to ruin McNally's life over 10 years ago. His last words to McNally in his office 10 years ago were "I am going to purposely put fraud in your lawsuit so you will never be able to file bankruptcy and your life will be ruined."

3. After extreme suffering and losing everything over the past 10 years, McNally filed bankruptcy in Denver, Colorado in 2014(case#14-20844-HRT).

4. After harassing McNally for over 10 years, forcing him to take depositions and borrow money from every family member(who had to borrow) to defend himself, Carns filed a new adversary lawsuit against McNally(case#Adv. Pro. 15-1445-HRT).

5. McNally who had no money to defend again, started this case pro se and was finally able to retain an attorney after his mom got 20k in credit cards to help him and risked everything.

6. The result-McNally WON all counts. *See attached judgement

7. In hopes to continue his mission of ruining McNally and his families life even further, Carns filed another appeal January 3rd 2017 because Carn's knows that McNally has no money to defend once again.

8. In fairness, Carn's deserves to pay McNally every cent he and his family have for his continued brutal, evil, pre-planned campaign to destroy McNally and his families lives.

## FACTS

Even after knowing fullwell the plaintiff had lost everything and had his life, family, and reputation destroyed, the defendant Michael Carns has continued to waste money on attorneys and private detectives for one purpose, to harass McNally. He claims he wants to make McNally's life a living hell. For 10 years Carns has been harassing and slandering McNally in hopes to crush him down and make him kill himself all because a real estate loss they each took during the great real estate crash back in 2007. McNally lost $10 million and had his life completely ruined where Carns lost $600,000 but received all his losses back from IRS tax credits. Since Carns is a trust fund baby with plenty of assets(marina's, businesses and real estate) he has lived completely comfortable while McNally has experienced a full blown nightmare moving from his six million dollar waterfront home to living in a small room for free with his mother and friends for years. The real tragedy is McNally would have not lost a penny if it weren't for Carn's weak, wrong actions.

    McNally and Carns owned a 7 million dollar commercial plaza. McNally owned 67% of the plaza to Carns 33% ownership. When the real estate market crashed millions of people took losses and panicked. A person who wasn't owed any money from McNally, who had nothing to do with the plaza, placed a lis pendins(false lien) on the property which cause an immediate default. Since the property was solid in value, McNally decided to sell. Within one week, McNally had 3 solid Buyers. Because of the lis pendins the buyers could not get the clear title to purchase the plaza. Rather than acting like a good partner, Carns chose a negative tactic and stole all the money out of their business account and used that money to sue McNally. McNally's attorney believed if Carns would have took a positive stance and supported McNally by putting pressure on the person who filed the lis pendins the sale would have gone through and a much better outcome for everyone. Everything

could have been prevented if it wasn't for Carn's wrong, selfish actions. McNally and his family has suffered unimaginable damages. McNally fought and did everything possible to get the plaza sale to go through while Carns got a default judgement on McNally. The judgment never got served to McNally otherwise he would have defended and filed strong counter claims against Carn's. McNally continued to focus on the sale of the plaza to resolve all damages. Carns' last bragging words in McNally's office were "My attorney and I are going to put fraud in your lawsuit so you will never be able to file bankruptcy and your life will be ruined". Since then McNally has had 10 years of living hell, while being forced to take depositions and harassed by Carns over and over.

In 2014, McNally filed bankruptcy in Denver, Colorado to have another chance on life. Finally after 10 years, McNally thought he could move on with his life and rebuild his credit. Just when his credit was finally fixed in position to use to buy real estate Carns quickly moved to shut it down. In fact, he did exactly what he threatened 10 years ago. In 2016, Carns filed a new lawsuit against McNally in the Denver, Colorado Court. This new lawsuit was another nightmare forcing McNally and his mother to go into major debt once again because of Carns' master plan he kept alive from 10 years ago. Carns took advantage of wealth and the united states court system to fullfill his fraudulent plan against McNally. Carns didn't care about the money, in fact his losses were already refunded through his tax credits. The one thing he did care about was keeping his sick, vindictive promise to ruin McNally's life by purposely putting fraud in hopes to prevent McNally to file bankruptcy. Carns scheme forced McNally into debt again and ruined McNally credit again repeating the severe damages and emotional stress. Despite Carns efforts the judge ruled in McNally's favor on every count of Carns' fraudulent lawsuit. In his testimony, Carn's started with an arrogant tone "Let me tell you how we do things in good old Sarasota, Florida." He further explained he couldn't believe it when he found out McNally filed bankruptcy because they had "fraud" in his complaint of lies.

Unbelievably, on the 3rd of January 2017 Carns appealed his loss in hopes McNally will not have enough money to defend himself once again. Carns is obsessed with causing McNally's downfall and inflicting pain to McNally's family no matter what the cost or how

much money he has to waste. Carns obsession with vengeance has caused McNally indescrible damages amounting to 100 million dollars.

**COUNT I - CIVIL EXTORTION**
**COUNT II - FRAUD**
**COUNT III - SLANDER**

1/13/17

Todd J. McNally
4400 South Quebec Street
#C108
Denver, CO 80237
941-914-5220

Case:15-01445-HRT   Doc#:67   Filed:12/19/16   Entered:12/19/16 13:59:38   Page1 of 1

## UNITED STATED BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### Honorable Howard R. Tallman

| | |
|---|---|
| In re: | ) |
| | ) |
| TODD J. MCNALLY, | ) Case No. 14-20844 HRT |
| | ) Chapter 7 |
| Debtor. | ) |
| | ) |
| MICHAEL CARNS, | ) Adversary No. 15-01445 HRT |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TODD J. MCNALLY, | ) |
| | ) |
| Defendant. | ) |

### JUDGMENT

The above-captioned matter came before the Court for trial on the Plaintiff's Complaint. The issues have been determined and a decision has been rendered. In accordance with the Findings of Fact and Conclusions of Law issued by this Court concurrently herewith,

IT IS ORDERED AND ADJUDGED that Judgment is entered against the Plaintiff and in favor of the Defendant on each count of the Plaintiff's Complaint.

Dated this  19th  day of December, 2016.

FOR THE COURT:

Kenneth S. Gardner, Clerk of Court

By: _____
     Deputy

APPROVED AND ACCEPTED:

By: _____
    Howard R. Tallman, Judge
    United States Bankruptcy Court

UNITED STATED BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

| | |
|---|---|
| In re: | ) |
| | ) |
| TODD J. MCNALLY, | ) Case No. 14-20844 HRT |
| | ) Chapter 7 |
| Debtor. | ) |
| | ) |
| | ) |
| MICHAEL CARNS, | ) Adversary No. 15-01445 HRT |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TODD J. MCNALLY, | ) |
| | ) |
| Defendant. | ) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THIS MATTER came before the Court for trial on the Plaintiff's Complaint. The Court is now prepared to rule, and hereby finds and concludes as follows.

### BACKGROUND

In 2006, the Plaintiff, Michael Carns ("Carns"), who had recently retired and moved to Sarasota, Florida, was looking for an investment opportunity. He answered a newspaper ad placed by the Defendant, Debtor Todd J. McNally ("McNally"), and decided to invest in an LLC with McNally. That LLC, VH Holdings, purchased the Southbridge Plaza ("Southbridge"), a shopping center located in Sarasota. Carns's initial investment was $600,000. He later invested additional funds, bringing his total investment to $700,000.

On behalf of the LLC, McNally attempted to sell the Southbridge property at an amount that would have generated a profit for its investors. Potential buyers entered into contracts to buy the property but were unable to close on the sale because a separate creditor of McNally, James Finn, had placed a lis pendens on all real property in which McNally had any interest directly or indirectly through VH Holdings LLC, including the Southbridge property. McNally was unable to clear the lis pendens or raise additional funds to satisfy the property's secured debt, and the Southbridge property was lost to foreclosure.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Adversary No. 15-01445 HRT

In 2007, Carns hired attorney James D. Gibson ("Gibson") to file a lawsuit against McNally in Sarasota (the "Florida Court"), alleging breach of contract and fraud claims. McNally did not timely file an answer to the complaint, and the Florida Court entered default judgment against him on the fraud claims in February 2008 (the "Default Judgment"). McNally asked the Florida Court to set aside the Default Judgment, alleging improper service, but that court denied McNally's request.

Meanwhile, McNally pursued other business attempts. Along with a new investor, Sarasota resident Jeffrey Hernandez, McNally formed new companies, including TheeLife.com, LLC; THEELIFE, LLC, which was changed to Vestor, LLC; and Vestor Auto Lease, LLC. McNally divided his time between Florida, where he lived at his mother's house in Sarasota, and Colorado. He engaged in foreign currency trading through Forex, and he wrote two books – *Jock Itch*, about his dealings with James Finn, and *Success Right Now*. Ultimately, none of his business efforts proved successful, and he filed his voluntary Chapter 7 bankruptcy petition in Colorado on August 6, 2014, through counsel.

McNally did not list Carns as a creditor on the schedules he initially filed with this Court on August 6, 2014. (Voluntary Petition, docket #1 in case number 14-20844 HRT). But, two weeks later, on August 18, 2014, he amended his schedules to add three creditors to his Schedule F, including Carns, listed as follows:

Michael Carns
c/o James D. Gibson
400 Burns Ct
Sarasota, FL 34236

(Amended Schedule F, docket #9). The Amended Schedule F was accompanied by a Rule 1009-1.1 Notice of Amendment to Schedule, which listed Carns as an added creditor (Notice, docket #11), and which included a certificate of service stating that each of the added creditors was served with the Amended Schedule F, the Rule 1009 Notice, a Notice of § 341 meeting, and a Proof of Claim form, on August 18, 2014.

McNally's § 341 meeting of creditors was held on September 8, 2014, and shortly thereafter, on September 10, 2014, his Chapter 7 Trustee filed his Trustee's report and notice of no distribution. The deadline to file an objection to discharge or to the dischargeability of certain debts passed on November 7, 2014, and no objections were timely filed. McNally received his discharge on November 13, 2014 (docket #16), and his case was closed on December 17, 2014 (docket #18).

On August 8, 2015, Carns, through newly-retained counsel located in Denver, filed his Motion to Reopen (docket #19), alleging that he had not received notice of McNally's bankruptcy filing. By Order entered August 12, 2015, the Court reopened McNally's bankruptcy

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Adversary No. 15-01445 HRT

case (docket #21), and Carns filed his adversary proceeding, case number 15-01445 HRT, on November 4, 2015.

## DISCUSSION

Carns asserts two claims for relief: (1) revocation of McNally's discharge, under 11 U.S.C. § 727(d); and (2) a determination that McNally's debt to Carns is excepted from McNally's discharge, under 11 U.S.C. § 523(a)(2). The Court will discuss each claim in turn.

### A.   Revocation of Discharge

Section 727(d) provides, in relevant part:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if–
> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge; [or]
> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee . . . .

11 U.S.C. § 727(d). As the Plaintiff, Carns bears the burden of proving each element by a preponderance of the evidence. *In re Silver*, 367 B.R. 795, 800 (Bankr. D.N.M.), *aff'd*, 378 B.R. 418 (B.A.P. 10th Cir. 2007). The statute is construed strictly against Carns and liberally in favor of McNally as the debtor. *Id.* (citing *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1292 (10th Cir. 1997)). The property not disclosed or turned over, or the failure to disclose, must be "material." *Id.* (citing *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 112 (1st Cir.1987)).

In support of his assertion that McNally failed to disclose all of his assets and income, Carns points to the bank statements of the corporate entities TheeLife.com LLC, Thee Life LLC, which became Vestor LLC, and Vestor Auto Lease LLC, noting both the amounts deposited and the amounts withdrawn by McNally. As to the amounts deposited, McNally testified credibly that the source of the deposits was transfers (loans or capital investments) of the personal funds of Jeffrey Hernandez rather than profits any of the companies made through their business activities. Unfortunately, none of the businesses operated by Hernandez and McNally were successful. Each limped along for a period of time and ultimately failed.

As to the withdrawals, particularly those made by a debit card in McNally's name, Carns points out that many of them were for expenses such as meals, travel, or ski lift tickets. McNally

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Adversary No. 15-01445 HRT

testified that those expenses were business expenses. The Court is not convinced that every expense shown is appropriately categorized as a business expense, but the Court is convinced that the funds being used were those of the corporate entities, and originally those of Hernandez, rather than funds to which McNally was otherwise entitled. The fact that McNally may have "padded" his legitimate business expenses with his own, personal entertainment expenses does not convert the funds remaining in the corporate account into McNally's personal funds. The Court cannot find that McNally's interest in the corporate checking accounts rises to the level that he should have listed the checking account balances on his schedules or turned the balances over to his Chapter 7 Trustee for administration. Thus, McNally's failure to disclose or turn over the corporate checking account funds was not "material," sufficient to support the revocation of his discharge.

McNally disclosed his business interests in TheeLife.com LLC and VH Holdings LLC on his Statement of Financial Affairs. He also disclosed his employment with Vestor Auto Lease on his Statement of Financial Affairs. Carns argues that McNally should have disclosed that he was an owner of Vestor Auto Lease, as McNally represented in a criminal complaint he filed on Vestor's behalf in August of 2015. The extent of McNally's ownership interest in Vestor Auto Lease is not clear. But even if McNally did have some ownership interest in Vestor Auto Lease on his petition date, the company was essentially put out of business by the auto thefts that occurred around the same time that McNally filed his bankruptcy petition (the same auto thefts that were the subject of the criminal complaint).

This is not a case in which a debtor failed to list a substantial ownership interest in a profitable business. In such cases, the Court can infer fraudulent intent from the failure to disclose a valuable asset. *See, e.g., Woolman et. al. v. Wallace (In re Wallace)*, 289 B.R. 428, 434 n.20 (Bankr. N. D. Okla. 2003) ("The trustee may prove the debtor's fraud by evidence of the debtor's awareness of the omitted asset and by showing that the debtor knew that failure to list the asset could seriously mislead the trustee or that the debtor acted so recklessly in not reporting the asset that fraud is implied."). In this case, the Court cannot infer a fraudulent intent from the Debtor's listing himself as an employee, rather than an owner/employee, of a failed business. As this Court has previously held: "It is not enough for the [Plaintiff] to point to inaccuracies and inconsistencies in the Debtor's schedules, as troubling as those might be. To deny the Debtor a discharge under § 727(a)(4)(A), the Court must be able to find that the Debtor intended to defraud and mislead the other parties in the case." *McVay v. Phouminh (In re Phouminh)*, 339 B.R. 231, 242 (Bankr. D. Colo. 2005). Considering all of the evidence before the Court, and construing the statute liberally in favor of McNally as the debtor, the Court finds that Carns has not met his burden of proving that McNally obtained his discharge through fraud.

Not only does Carns bear the burden of proving that McNally committed fraud, but also Carns bears the burden of showing that Carns did not know of the fraud before McNally's discharge was granted. A creditor must show that he "exercised diligence in investigating the facts during the case, especially after having been put on notice of possible fraud." *Silver*, 367

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Adversary No. 15-01445 HRT

B.R. at 806-07 (citing 6 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 727.15[3] (15th ed. revised 2006)). Here, as discussed below, Carns received notice of McNally's bankruptcy case through his attorney, Gibson. Given that notice, the Court cannot find that Carns exercised due diligence from the time of McNally's bankruptcy filing to the time of the entry of McNally's discharge. The Court cannot find that Carns has met his burden of proof under § 727(d)(1).

With respect to § 727(d)(2), the Court cannot find that McNally acquired property that was property of his bankruptcy estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report such property and deliver it to his Chapter 7 Trustee. There is no evidence supporting a conclusion that any of the business interests McNally pursued pre-petition yielded substantial assets post-petition. McNally's two books were not successful. His efforts in currency trading were not profitable. The companies in which Hernandez invested were not profitable, leading Hernandez to file his own bankruptcy case. McNally does not have substantial assets. He continues to receive financial assistance from his mother, who paid the attorney's fees for his defense in this matter. Given these circumstances, the Court cannot find that Carns has met his burden of proof under § 727(d)(2).

### B. Exception from Discharge

Carns asserts that McNally's debt to him is excepted from McNally's discharge under 11 U.S.C. § 523(a)(2), as money obtained by false pretenses, false representations, or fraud. The Court finds that the relevant section is not § 523(a)(2), for which the applicable complaint filing deadline expired, but is instead § 523(a)(3), which provides a discharge exception for debt as follows:

> (3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit--
>
> . . .
>
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.]

11 U.S.C. § 523(a)(3).

For purposes of these findings, the Court assumes that McNally's debt to Carns is of a kind specified in § 523(a)(2), given the findings in the Default Judgment. *See Howard Alternatives, Inc. v. Bentov (In re Bentov)*, 514 B.R. 907 (Bankr. S.D. Fla. 2014) (under Florida

Page 5 of 7

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Adversary No. 15-01445 HRT

law, a default judgment has preclusive effect in a subsequent dischargeability proceeding).[1] The question before the Court thus becomes whether McNally's debt to Carns was scheduled in time to permit the timely filing of a complaint to determine dischargeability. Here, the Court finds that McNally did schedule his debt to Carns in time to permit the timely filing of a dischargeability complaint. McNally did not list Carns on the schedules he initially filed with his bankruptcy petition on August 6, 2014, but he did list Carns on his amended schedule F filed just two weeks later, on August 18, 2014.

Carns was scheduled in care of his attorney, Gibson, who had represented Carns in obtaining the Default Judgment and who, for some time afterward, continued to represent Carns in attempts to collect the Default Judgment. There was no evidence that Gibson's mailing address, as listed on the amended schedule, was incorrect. There was no evidence that the mail addressed to Gibson was returned to McNally's counsel as undeliverable. The Court finds that the notice to Gibson, Carns's agent in regards to the Default Judgment, satisfies the requirement of notice to Carns, and Carns cannot meet the requirements of § 523(a)(3). *See In re Schicke*, 290 B.R. 792, 804 (B.A.P. 10th Cir. 2003) (notice to a creditor's attorney is imputed to the creditor and bars an extension of the dischargeability deadline under § 523(a)(3)(B)), *aff'd*, 97 F. App'x 249 (10th Cir. 2004).

---

[1] In the absence of the Default Judgment, the Court could not find that McNally's debt to Carns falls within § 523(a)(2). Carns did not testify or present documentary evidence of any specific representation McNally made to him that was false. Moreover, Carns did not base his investment decision solely McNally's representations; he made his decision to invest after obtaining additional financial information from VH Holdings's bookkeeper and having his own accountant review the financial information. Carns regularly visited the Southbridge property and reviewed its financial information, and months later increased his investment from $600,000 to $700,000. Given those circumstances, the Court finds neither actual nor justifiable reliance. Finally, the Court cannot find that any misrepresentation McNally may have made to Carns was the cause of the Carns's damages; the property was lost to foreclosure because James Finn placed a lis pendens, perhaps improperly, on the Southbridge property. Otherwise, the property would have been sold at a profit. Carns has not proven to this Court any of the five elements necessary to establish a § 523(a)(2) claim for misrepresentation. *See Fowler Bros v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996) (identifying the five elements necessary to a determination of non-dischargeability under § 523(a)(2)(A), but requiring reasonable reliance); *Field v. Mans*, 516 U.S. 59, 69-76 (1995) (establishing justifiable reliance standard under § 523(a)(2)(A)). Nor has Carns proven to this Court any of the elements necessary to establish a § 523(a)(2) claim for actual fraud. *See Husky Intn'l Electronics, Inc. v. Ritz*, 136 S.Ct. 1581 (2016).

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Adversary No. 15-01445 HRT

## CONCLUSION

For the reasons discussed above, the Court finds that Carns has not met his burden of proving that McNally obtained his discharge by fraud or that he obtained property of the estate that he fraudulently failed to disclose or turn over to his Chapter 7 Trustee. The Court will therefore enter judgment in favor of McNally on Carns's claim under 11 U.S.C. § 727(d). Further, the Court finds that Carns has not met his burden of showing that he falls within 11 U.S.C. § 523(a)(3). The Court will therefore enter judgment in favor of McNally on that claim as well.

Accordingly, it is

HEREBY ORDERED that McNally is entitled to a judgment in his favor on each of the counts of Carns's complaint. A separate judgment shall enter.

Dated this __19th__ day of December, 2016.

BY THE COURT:

*Howard Tallman*
Howard R. Tallman, Judge
United States Bankruptcy Court
